UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM FIGUEROA,

                Plaintiff,

     v.

CORRECTIONAL OFFICER P. STORM,
CORRECTIONAL OFFICER BOCZAR,
CORRECTIONAL HEARING OFFICER KEARNEY,
CORRECTIONAL HEARING OFFICER SCHOELLOPF,
and CORRECTIONAL SERGEANT SINDONI,

                Defendants.

**DECISION AND ORDER**
07-CV-18S

## I. INTRODUCTION

In this action, pro se Plaintiff William Figueroa alleges, pursuant to 42 U.S.C. § 1983, that Defendants violated his Fourteenth Amendment due process rights and Eighth Amendment rights to be free from excessive force while he was an inmate in the custody of the New York State Department of Correctional Services ("DOCS").  Presently before this Court is Defendants' Motion for Summary Judgment.[1]  Despite being warned about the consequences of his failure to do so, Plaintiff has not responded to Defendants' motion. For the following reasons, Defendants' motion is granted in its entirety.

## II. BACKGROUND

Because Plaintiff failed to respond to Defendants' motion, all facts set forth in Defendants' Rule 56 Statement are deemed admitted.  See Fed. R. Civ. P. 56 (e)(2); Local

---

[1]In support of their Motion for Summary Judgment, Defendants filed the following documents: a memorandum of law; a Rule 56 Statement of Undisputed Facts; the Declaration of T. Schoellkopf, with attached exhibits; the Declaration of P. Storms, with attached exhibits; the Declaration of M. Kearney, with attached exhibits; and the Declaration of J. Boczar, with attached exhibits.

Rule 56 (a)(2).

## A.    May 6, 2005 Incident and Subsequent Disciplinary Hearing

Plaintiff is a deaf inmate who was housed at the Wende Correctional Facility during the time period relevant to the Complaint.

On May 6, 2005, Plaintiff threw a bucket of urine and feces on a prison staff member. (Defendants' Rule 56 Statement of Undisputed Facts ("Defendants' Statement"), ¶ 9.)  This resulted in the issuance of a pre-hearing restricted-diet order for May 6-12, 2005, and a cell-shield order, which was repeatedly renewed through June 7, 2005. (Defendants' Statement, ¶ 12.)

On May 17, 2005, Defendant Schoellkopf conducted a Tier III disciplinary hearing regarding two Misbehavior Reports that arose out of this incident. (Defendants' Statement, ¶ 1.)  Before the hearing, a sign language interpreter assisted Plaintiff to ensure that he understood the charges against him, could interview potential witnesses, and could obtain relevant documents.  (Defendants' Statement, ¶ 1.)  Plaintiff completed a form attesting that the interpreter meaningfully assisted him.  (Defendants' Statement, ¶ 1.)

Defendant Schoellkopf began the hearing by advising Plaintiff of his rights, and Plaintiff acknowledged through the interpreter that he understood.  (Defendants' Statement, ¶ 2.)  Plaintiff complained that he could not effectively sign while handcuffed, but in response to Defendant Schoellkopf's inquiry, the interpreter confirmed that she could understand Plaintiff's signs.  (Defendants' Statement, ¶ 2.)  At some point during the hearing, Plaintiff became agitated and pulled down his pants, exposing himself to Defendant Schoellkopf and the female interpreter.  (Defendants' Statement, ¶ 2.) Plaintiff was therefore removed from the hearing.  (Defendants' Statement, ¶ 2.)

**B.     May 16, 2005 Incident and Subsequent Disciplinary Hearing**

On May 16, 2005 — one day before the hearing described above — Plaintiff was housed in the Special Housing Unit ("SHU").  (Defendants' Statement, ¶ 3.)  After receiving a restricted diet meal, Plaintiff refused to return his tray, cup, and spork, despite Defendant Boczar's directive to do so.  (Defendants' Statement, ¶¶ 3, 11.)  Plaintiff ignored several more orders to surrender his utensils, and instead held the cup and threatened to throw its unknown liquid contents on staff.  (Defendants' Statement, ¶¶ 3, 4.)  Members of the Crisis Intervention and Mental Health units were subsequently brought in, but they too were unable to make Plaintiff comply.  (Defendants' Statement, ¶ 4.)  Finally, after obtaining authorization from the Superintendent and clearance from the medical unit, officers administered two doses of a chemical agent to gain Plaintiff's compliance.  (Defendants' Statement, ¶ 5.)  After the second dose, Plaintiff surrendered his hands for cuffing and was removed from his cell.  (Defendants' Statement, ¶ 5.)  Officers escorted Plaintiff to the decontamination shower, where officers frisked him and a nurse cleaned out his eyes. (Defendants' Statement, ¶ 5.)

A sign language interpreter was present during the entire extraction process to communicate with Plaintiff.  (Defendants' Statement, ¶ 5.)  Pursuant to DOCS policy, the use of the chemical agent and cell extraction were videotaped, and those tapes are part of the record.  (Docket No. 40.)  As a result of this incident, Plaintiff was again placed on a pre-hearing restricted diet for refusing to return his tray and utensils and for threatening staff with the cup of unknown liquid.  (Defendants' Statement, ¶ 10.)

On May 24, 2005, Defendant Kearney conducted a single Tier III hearing regarding a Misbehavior Report arising out of the May 16, 2005 incident, as well as in regard to two

3

other misbehavior reports that were eventually expunged from Plaintiff's record. (Defendants' Statement, ¶ 6.)  Two sign language interpreters were present at the hearing. (Defendants' Statement, ¶ 7.)  Soon after Defendant Kearney explained that the hearing would involve three misbehavior reports, Plaintiff became uncooperative and refused to look at or acknowledge the interpreters.  (Defendants' Statement, ¶ 8.)  Because he refused to cooperate or participate in the hearing, Plaintiff was removed, and the hearing continued in his absence.  (Defendants' Statement, ¶ 8.)

### III. DISCUSSION

Plaintiff has not responded to Defendants' motion, nor has he at anytime submitted evidentiary support for his claims.  In his Complaint, Plaintiff alleges that Defendants violated his due process rights by (1) serving him a restricted diet meal on May 16, 2005, which was beyond the expiration of the order (Complaint, Docket No. 1, p. 2), (2) shielding his cell beyond May 10, 2005 (Complaint, p. 2), (3) failing to provide a sign language interpreter for his hearings and interactions with staff in May 2005 (Complaint, p. 3), and (4) removing him from his Tier III hearings without cause (Complaint, p. 3).  He further alleges that Defendants violated his Eighth Amendment rights by using excessive force against him on May 16, 2005, when the chemical agent was administered, and May 17, 2005, when he was allegedly placed in restraints.  (Complaint, p. 3.)

Defendants do not deny that these events generally took place (other than failing to provide a sign language interpreter), but rather, maintain that there is a legitimate reason for each action taken, and that none of Plaintiff's constitutional rights were violated. Moreover, Defendants maintain that even if a constitutional violation occurred, they are

4

entitled to the protections of qualified immunity.

As discussed below, Plaintiff's claims are factually and legally flawed.

## A.   Dismissal For Failure to Prosecute

As an initial matter, this case warrants dismissal based on Plaintiff's failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides that:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.   Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule — except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 — operates as an adjudication upon the merits.

FED. R. CIV. P. 41(b).

Where the defendant has not moved under Rule 41(b), a court may nonetheless dismiss a case *sua sponte*.   Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed. 2d 734 (1982); Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982).   In Link, the Supreme Court noted that: "[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link, 370 U.S. at 630-31.

Rule 41(b) does not define what constitutes failure to prosecute.   But the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." Lyell

Theatre Corp., 682 F.2d at 42.  Dismissal pursuant to Rule 41(b) falls within the court's discretion.  See id. at 42-43 ("the scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion").  It is, however, "a harsh remedy to be utilized only in extreme situations."   Harding v. Fed. Reserve Bank, 707 F.2d 46, 50 (2d Cir. 1983) (quoting Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)); see also Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir. 1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should be granted only "when the circumstances are sufficiently extreme." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citing Nita v. Connecticut Dep't of Envtl. Prot., 16 F.3d 482, 487 (2d Cir. 1994)).

The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights, and (5) whether lesser sanctions would be appropriate.  See United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 255 (2d Cir. 2004); Nita, 16 F.3d at 485; Feurtado v. City of New York, 225 F.R.D. 474, 477 (S.D.N.Y. 2004) (quoting Jackson v. City of New York, 22 F.3d 71, 74 (2d Cir. 1994)).

In the present case, these factors weigh in favor of dismissal.  It has been more than

6

two years since this Court directed Plaintiff to respond to Defendants' motion and he has failed to do so.  Plaintiff was twice warned that his failure to respond to Defendants' motion could result in dismissal of this case (Docket Nos. 32, 39), and Defendants are prejudiced by the delay.  This Court therefore finds that dismissal is warranted for failure to prosecute, and that no lesser sanction would be appropriate.  Nonetheless, this Court addresses Defendants' motion on the merits.

**B.     Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  Rule v. Brine, Inc., 85

7

F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment.  Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party.  Anderson, 477 U.S. at 252.

By rule, judgment may also be entered against a party that fails to respond to a properly filed motion for summary judgment, if appropriate.  FED. R. CIV. P. 56 (e)(2).  This district's Local Rules provide for similar relief: a nonmoving party's failure to file and serve an answering memorandum or affidavit may constitute grounds for resolving the motion against it.  See Local Rule 7 (a)(2)(A) and (a)(3).

But failure to oppose or respond to a motion for summary judgment standing alone does not warrant granting the motion: "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law."  See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244, 246 (2d Cir. 2004) ("failure to respond to [a Rule 56] motion does not alone discharge the burdens imposed on a moving party"); Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001).  If the moving party fails to submit evidence sufficient to meet its burden, "summary judgment must be denied even if no opposing evidentiary matter is presented."  Amaker, 274 F.3d at 681.  Consequently, the Second Circuit has emphasized that district courts "'in considering a motion for summary

8

judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" Vt. Teddy Bear, 373 F.3d at 246 (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)).

**C.     42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).   Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's claims are grounded in the Fourteenth and Eighth Amendments.

**D.     Fourteenth Amendment Due Process Claims**

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV.  There are two broad categories of due process claims — substantive and procedural.   A substantive due process claim is based upon the deprivation of a constitutionally protected life, liberty, or property interest. See B.D. v. DeBuono, 130 F. Supp.2d 401, 431 (S.D.N.Y. 2000).  A procedural due process claim is based upon the

deprivation of a protected life, liberty, or property interest, without notice and an opportunity to be heard. Id. at 432-33.  With respect to any due process claim – substantive or procedural – "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

Thus, to establish a due process violation, an inmate must prove that defendants interfered with his protected liberty interests by satisfying a two-part test: "(1) the confinement or restraint must create an 'atypical and significant hardship in relation to the ordinary incidents of prison life,' Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); and (2) the state must have granted a liberty interest by statute or regulation to be free from that confinement or restraint." Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (citing Sandin, 515 U.S. at 484).

### 1.    Restricted Diet Meals

Plaintiff alleges that Defendant Storms violated his due process rights by giving him a restricted-diet meal on May 16, 2005, allegedly beyond the expiration of the restricted-diet order.  (Complaint, p. 2.) But again, Plaintiff has submitted no evidence to support this claim.

Defendant Storms, on the other hand, has submitted a declaration attesting that on May 16, 2005, prison staff placed Plaintiff on a restricted diet from May 16 – May 22, 2005, for refusing to return his utensils.  (Declaration of P. Storms ("Storms Decl."), Docket No. 35,  ¶ 5.)  A copy of the pre-hearing restricted-diet order is attached as Exhibit C to Defendant Storms's affidavit.  Thus, Defendant Storms provided the restricted-diet meal pursuant to a proper order.  In any event, receiving a single restricted-diet meal, without

10

any further allegation that provision of that meal endangered Plaintiff's health in some way, does not demonstrate an atypical or significant hardship under <u>Sandin</u>. <u>See</u> <u>Porter v. Wolczyk</u>, No. 9:04CV708, 2007 WL 397046, at *3 (N.D.N.Y. Jan. 30, 2007) ("As applied to a due process claim involving a prisoner's diet, in order to allege an atypical and significant hardship, it is not sufficient merely to allege a dietary restriction, but rather a plaintiff must allege that the restricted diet is nutritionally inadequate or otherwise poses a threat to his physical well being.") (citing cases).

### 2.    Cell-Shield Order

Plaintiff next alleges that Defendants left a shield on his cell well past the expiration of the cell-shield order, which allegedly expired on May 10, 2005.

A cell-shield order was issued on May 6, 2005, and renewed several times through at least June 7, 2005.  (Storms Decl., ¶ 8.)  Copies of the cell-shield orders are attached to the Storms Declaration as Exhibit D.  Defendants placed the cell shield on Plaintiff's cell pursuant to these orders.  (Storms Decl., ¶ 9.)  Accordingly, Plaintiff's claim that use of the cell shield beyond May 10, 2005, was unauthorized lacks merit.

In addition, use of the cell shield and renewal of the cell-shield orders did not violate Plaintiff's Fourteenth Amendment due process rights.  "It has been held that the daily review of deprivation orders, the availability of the inmate grievance program, and the fact that the inmate has a judicial remedy to challenge deprivation orders, and restraining orders, under CPLR article 78 clearly provide due process of law." <u>Dawes v. Coughlin</u>, 964 F.Supp. 652, 658 (N.D.N.Y. 1997).  Moreover, "courts in this Circuit have found that a prison inmate in New York has no protected liberty interest in confinement in an unshielded cell."  <u>Breazil v. Bartlett</u>, 998 F.Supp. 236, 243 (W.D.N.Y. 1997) (citing <u>DeMaio</u>, 877

11

F.Supp. at 93 and Young v. Scully, 91 Civ. 4332, 1993 WL 88144, at *3 (S.D.N.Y. Mar. 22, 1993)). As such, no violation of the Fourteenth Amendment occurred.

### 3. Sign Language Interpreter and Removal from Tier III Hearing

Plaintiff alleges that Defendants violated his due process rights by failing to provide a sign language interpreter so that he could understand the proceedings and by removing him from the hearing without cause. (Complaint, p. 3.)

It is well-settled that inmates retain due process rights in prison disciplinary proceedings. See Porter v. Goord, 04-CV-485, 2004 WL 2271383, at *2 (W.D.N.Y. Oct. 5, 2004) (quoting Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir. 2003)). In Wolff v. McDonnell, the Supreme Court held that whenever an inmate is subjected to a prison disciplinary proceeding that might result in the deprivation of a liberty interest, prison officials must ensure that certain procedural safeguards are in place. 418 U.S. 539, 563-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

For example, the inmate must be provided advance written notice of the charges against him and a written statement by the hearing officer setting forth the evidence relied upon and the reasons for the disciplinary action taken. Id. at 563-64. The inmate must also be afforded some opportunity to call witnesses and present documentary evidence. Id. at 566. In addition, the hearing tribunal must be sufficiently impartial to guard against "a hazard of arbitrary decision making." Id. at 571. Finally, the hearing disposition must be supported by at least "some evidence." See Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, Defendants provided Plaintiff with the assistance of Ann Andzel, who is a certified sign language interpreter. (Declaration of T. Schoellkopf ("Schoellkopf Decl."),

Docket No. 34, ¶ 7.)  Exhibit B to the Schoellkopf Declaration is a copy of an Assistant Form, demonstrating that Andzel meaningfully assisted Plaintiff in preparation for and at his hearing, including identifying witnesses and document requests.  Both Andzel and Plaintiff signed this form.  In addition, the transcript of the hearing, which is attached as Exhibit C to the Schoellkopf Declaration, confirms that Plaintiff received Andzel's assistance during the hearing as well.  Thus, Plaintiff's claim that he was denied a sign language interpreter and knowledge of the proceedings against him is false.

The transcript of the hearing also demonstrates the falsity of Plaintiff's allegation that Defendants Schoellkopf and Kearney removed him from the Tier III hearing without cause.  The transcript reflects that after Defendant Schoellkopf explained his rights to him, Plaintiff became agitated after Defendant Schoellkopf denied his request to have his handcuffs removed.  (Schoellkopf Decl., Exhibit C.)  Plaintiff then pulled down his pants and exposed himself to Defendant Schoellkopf and Andzel.  (Schoellkopf Decl., Exhibit C.) It was at that point that Defendant Schoellkopf ordered Plaintiff removed.  (Id.)  Similarly, Plaintiff disrupted the hearing conducted by Defendant Kearney.  (Defendants' Statement, ¶ 8.)  Thus, Defendants Schoellkopf and Kearney did not order Plaintiff removed without cause, and therefore, did not violate Plaintiff's due process rights.

## E.    Eighth Amendment Excessive Force Claims

The Eighth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment and "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); U.S. Const. amend. VIII.   "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes

13

upon it a corresponding duty to assume some responsibility for his safety and general well being." Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (quotation and citation omitted). Part of the state's duty is to protect inmates from punishments that are "totally without penological justification." See Williams v. Fitzpatrick, No. 03 CV 11, 2006 WL 1889964, at *2 (D.Vt. July 10, 2006) (quoting Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

Plaintiff's Eighth Amendment excessive force claims are evaluated under a two-prong inquiry: both an objective and subjective prong must be satisfied. See Warren v. Chakravorty, No. 03 Civ. 8736, 2006 WL 2067736, at *7 (S.D.N.Y. July 25, 2006). To meet the objective prong, the alleged violation must be "sufficiently serious" by objective standards. Farmer, 511 U.S. at 834. To meet the subjective prong, the inmate must show that the prison officials involved had a wanton state of mind when they engaged in the misconduct. See Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (quoting Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994)).

De minimus use of force is excluded from constitutional recognition, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Green v. Morse, No. 00-CV-6533, 2005 WL 1490301, at *2 (W.D.N.Y. June 23, 2005) (quoting Hudson, 503 U.S. at 9-10). "Punishments incompatible with the evolving standards of decency that mark the progress of a maturing society or involving the unnecessary and wanton infliction of pain are repugnant to the Eighth Amendment." Id. (alterations omitted).

The Second Circuit has explained an excessive force claim as follows:

> The malicious use of force to cause harm constitutes an Eighth Amendment violation per se whether or not significant injury is evident. This result follows because when prison officials

14

> maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. Nevertheless, a *de minimus* use of force will rarely suffice to state a constitutional claim.  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

Griffin v. Crippen, 193 F.3d at 91 (citations and internal quotations omitted).  Thus, "even if the harm inflicted is not significant, if plaintiff can show malicious intent then the objective prong will [ ] almost always be satisfied."  Green, 2005 WL 1490301, at *3.

Here, Plaintiff alleges that Defendants Sindoni and Boczar used excessive force against him on May 16, 2005, when they administered a chemical agent, and on May 17, 2005, when they allegedly placed him in restraints.  The record is clear, however, that Defendants were justified in their use of force.

First, Defendant Sindoni was not personally involved in the administering of the chemical agent.  (Declaration of J. Boczar ("Boczar Decl."), Docket No. 37, ¶ 3.)  Second, contrary to Plaintiff's allegations, a sign language interpreter was present during the cell extraction on May 16, 2005.  (Boczar Decl., ¶ 5.)  Finally, there is no dispute that Plaintiff failed to comply with the officers' repeated directives to return his tray and utensils and threatened to throw liquid on the staff.  (Boczar Decl., ¶ 4.)  Defendants also provided Plaintiff ample opportunity to avoid the use of the chemical agent, and even brought in the Crisis Intervention and Mental Health units to assist in gaining Plaintiff's compliance. (Boczar Decl., ¶ 4.)  Defendants received medical clearance and superintendent approval for use of the chemical agent and discharged only so much of the agent as was required to gain Plaintiff's compliance.  (Boczar Decl., ¶ 4.)  Accordingly, there is no merit to Plaintiff's claim that Defendants Sindoni and Boczar used excessive force against him on

15

May 16, 2005, when they administered the chemical agent.

As to Plaintiff's claim that his Eighth Amendment rights were violated by the use of restraints, there are no factual allegations set forth in the Complaint concerning this alleged deprivation, beyond the allegation that it occurred.  No defendant is identified; no time or place is identified; and no injury (other than the constitutional violation) is alleged.  Accordingly, this Court finds that Defendants are entitled to summary judgment on this claim as well.

**F.     Qualified Immunity**

Defendants argue that, even assuming that Plaintiff suffered constitutional deprivations, they are entitled to qualified immunity.  Officials are protected from § 1983 liability on the basis of qualified immunity if (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their actions did not violate the law.  See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999).  As discussed above, this Court finds that Defendants' treatment of Plaintiff was reasonable in all respects.  Moreover, it is objectively reasonable to conclude that Defendants' believed that their own actions were reasonable.  Accordingly, this Court finds that even assuming the existence of a constitutional violation, Defendants are entitled to qualified immunity.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted, and in the alternative, Plaintiff's case is dismissed for failure to prosecute.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 32) is GRANTED.

FURTHER, that in the alternative, Plaintiff's case is dismissed for failure to prosecute, pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:　　　April 26, 2011
　　　　　　Buffalo, New York

                                        /s/William M.Skretny
                                    WILLIAM M. SKRETNY
                                          Chief Judge
                                United States District Court